**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: DUPIXENT (DUPILUMAB) PRODUCTS LIABILITY LITIGATION** | Civil Action No. 26-md-3180 |
| **This Document Relates to:** **ALL CASES** | |

# JOINT INITIAL MANAGEMENT REPORT

Pursuant to Paragraph 5 of Initial Procedure Order No. 1 (ECF No. 3), entered June 11, 2026, and Federal Rule of Civil Procedure 16.1, the parties in the above-captioned multidistrict litigation respectfully submit this Joint Initial Management Report following the parties' meet and confer conducted on July 22, 2026. The parties address below each item identified in Paragraph 5(a) through (p) of the Initial Procedure Order.

**(a) Leadership Structure / Appointment of Leadership Counsel**

***Plaintiffs' Proposal for Leadership:*** Plaintiffs believe that leadership appointments for Plaintiffs' Leadership will be appropriate in this litigation. Plaintiffs intend to work cooperatively to separately propose a Plaintiffs' Leadership slate for the Court's consideration prior to the initial Case Management Conference.

***Defendants' Proposal for Leadership***: Given the small number of Defendants, Defendants do not believe formal Defendant Leadership appointments

are necessary, other than designation of counsel to facilitate communications with Plaintiffs and the Court. Defendants will be in a position to identify such counsel promptly for the Court.

**(b) Previously Entered Scheduling or Other Orders to Be Vacated or Modified**

Pursuant to the Case Management Order that governs civil matters assigned to Magistrate Judge J. Brendan Day at ¶ 8, the parties will continue to meet and confer on a Proposed Discovery Confidentiality Order for the Court's consideration. The parties will submit both a clean version of the Proposed Discovery Confidentiality Order found at Appendix S of the Local Civil Rules, reflecting the parties' edits, and an additional version of the Proposed Discovery Confidentiality Order that indicates, via redline, how it differs from the form order.

Additionally, the parties are preparing for the Court's consideration the following proposed orders:

- Proposed Order Regarding Electronically Stored Information
- Proposed Order Regarding Depositions
- Proposed Order Regarding *In Extremis* Depositions
- Proposed Order Regarding Direct Filings
- Proposed Order Regarding Pathology Preservation, Handling, and Testing
- Proposed Order Governing Clinical Trial Specimens

**(c) Schedule for Additional Management Conferences**

The parties anticipate that regular management conferences will aid the efficient administration of this litigation, and respectfully leave the frequency and format of such conferences to the Court's discretion.

**(d) Managing Direct Filing of New Actions in the MDL**

To eliminate potential delays associated with transfer to this Court of actions filed in or removed to other federal district courts, and to promote judicial efficiency, the parties propose that the Court permit direct filing of new actions in the MDL, subject to the provisions and limitations set forth in a Direct Filing Order the parties will submit for the Court's consideration.

**(e) Related Actions Filed in Other Courts and Coordination**

- *Black v. Regeneron Pharmaceuticals, Inc. et al.*, ATL-L-000618-26 (N.J. Super. Ct., Atlantic Cnty. – New Jersey plaintiff)
- *Mullin v. Sanofi-Aventis U.S. LLC, et al.*, ATL-L-001032-26 (N.J. Super. Ct., Atlantic Cnty. – New Jersey plaintiff)
- *Anthony v. Sanofi-Aventis U.S. LLC, et al.*, ATL-L-001052-26 (N.J. Super. Ct., Atlantic Cnty. – New York plaintiff)
- *Douglas v. Regeneron Pharmaceuticals, Inc. et al.*, No. ATL-L-001199-26 (N.J. Super. Ct., Atlantic Cnty. – Tennessee plaintiff)
- *Acclis v. Sanofi-Aventis US, LLC et al.*, No. ATL-L-001335-26 (N.J. Super. Ct., Atlantic Cnty. – Texas plaintiff)
- *Alberto v. Sanofi-Aventis US LLC et al.*, No. ESX-L-005234-26 (N.J. Super. Ct., Essex Cnty. – New Jersey plaintiff)
- *Thomas v. Sanofi-Aventis US LLC et al.*, No. ESX-L-005475-26 (N.J. Super.

Ct., Essex Cnty. – New Jersey plaintiff)

- *Lafaye v. Sanofi-Aventis U.S. LLC et al.*, No. ATL-L-001462-26 (N.J. Super. Ct., Atlantic Cnty. – New York plaintiff)
- *Hector v. Sanofi-Aventis U.S. LLC et al.*, No. MID-L-005361-26 (N.J. Super. Ct., Middlesex Cnty. – New Jersey plaintiff)
- *Fuller v. Sanofi-Aventis U.S. LLC*, No. ATL-L-001737-26 (N.J. Super. Ct., Atlantic Cnty. – North Carolina plaintiff)
- *Smith v. Sanofi-Aventis U.S. LLC*, No. ATL-L-001749-26 (N.J. Super. Ct., Atlantic Cnty. – New York plaintiff)
- *Hunt v. Sanofi-Aventis U.S. LLC*, et al., No. BUR-L-1970-26 (N.J. Super. Ct., Burlington Cnty. – New Jersey plaintiff)

**(f) Whether Consolidated Pleadings Should Be Prepared**

***Parties' Proposal for Consolidated Pleadings:*** The parties are in agreement, subject to input from the Court, that based on the existing smaller number of actions, consolidated pleadings need not be prepared. The parties will meet and confer on a proposal for Defendants' 12(b) motions, including deadlines, with the right to assert the same preserved in all and each individual case.

**(g) Exchange of Information on Factual Bases / Rule 26(a)(1) Initial Disclosures**

***Parties' Proposal for Initial Disclosures:*** The parties propose that all parties be required to provide initial disclosures, as provided under Rule 26(a)(1), and comply with Local Civil Rule 7.1.1.

**(h) Discovery Procedures and Timing**

***Parties' Proposal for Discovery Procedures and Timing:***

1. **Phased Discovery.** The Parties propose that discovery proceed in two

phases with the first phase addressing discovery of Defendants on all subject matters other than sales and marketing. This will allow Defendants to address what they believe is a threshold issue (general causation) while allowing Plaintiffs to pursue most avenues of discovery of Defendants.

**Phase I** will include (a) expert discovery directed to general causation, (b) discovery of Defendants (consisting of interrogatories, document productions, requests for admission, and depositions of Sanofi, Regeneron, Genzyme, their current and former employees and consultants, and potentially third parties) targeted to the categories identified below, and (c) Rule 702 motions directed to the admissibility of general causation opinions. Following the completion of Phase I discovery the parties will promptly meet and confer regarding a schedule for and commence **Phase II** discovery which will encompass the remaining company discovery (sales and marketing) and case-specific fact discovery.

During Phase II and throughout the remainder of the MDL, the parties will be bound by the Court's Phase I rulings (absent ordinary grounds for reconsideration). This includes but is not limited to rulings on the Rule 702 and summary judgment motions.[1]

**2. Scope, Duration, and Limits on Phase I Discovery.** Phase I company

[1] Nothing in this order, however, precludes the parties from subsequent use of case-specific experts—including specific causation experts—whose opinions may include opinions on general causation.

discovery will include topics like the following, with the intention for Phase I to include discovery on general causation and specifically excluding only sales, marketing, and promotional practices. Following the case management conference, the parties will meet and confer regarding the scope of the below topics, search terms, date ranges and custodians, and reasonable relevance and proportionality, for this discovery, which will, after entry of a protective order of confidentiality, proceed on a rolling basis and will include but is not limited to:

- Custodial, database, and share file documents and records relating to pharmacovigilance, safety signal assessments and reporting concerning Dupixent's alleged association with cutaneous T-cell lymphoma ("CTCL");
- Custodial, database, and share file documents and records relating to clinical and preclinical studies involving Dupixent;
- Custodial, database, and share file documents and records relating to Medical Affairs, published literature and other studies concerning Dupixent's alleged association with CTCL;
- Custodial, database, and share file documents and records relating to Defendants' submissions, correspondence, or other interactions with U.S. regulatory authorities and European Medicines Agency (EMA), Health Canada, Therapeutic Goods Administration (TGA), and the Pharmaceutical and Medical Devices Agency (PDMA)[2] (subject to privacy considerations) concerning Dupixent's alleged association with CTCL;
- Custodial, database, and share file documents and records relating to any joint safety committee meetings and other communications among and within Defendants or with Defendants' consultants concerning Dupixent's

[2] Plaintiffs reserve the right to seek additional discovery from other foreign regulatory agencies to the extent any additional agencies act on and/or undertake a regulatory review of Dupixent and CTCL.

alleged association with CTCL;

- Defendants' communications with consultants, authors, investigators and journals (along with related internal memoranda and communications) regarding the relationship between Dupixent and CTCL; and

- Custodial, database, and share file documents and records relating to Defendants' internal safety assessments of Dupixent's alleged association with CTCL.

For the sake of clarity, the Parties agree that a document otherwise responsive to Phase I discovery will not be excluded on the basis of its relation to sales and marketing. Defendants do not concede the relevance or existence of the information and/or documents discussed in this section and reserve the right to make their objections.

**The parties will proceed on the following schedule for Phase I:**

| Milestone | Deadline |
|---|---|
| Stay of discovery on general causation issues (identified above) lifted | November 16, 2026 |
| Defendants to produce complete Dupixent regulatory file | November 16, 2026 |
| Parties to agree on medical monitoring class discovery schedule, or submit competing proposals to Court | January 15, 2027 |
| Defendants' certification of substantial completion of production of Phase I Discovery (privilege logs to be produced on a rolling basis 60 days following each rolling production) | May 7, 2027 |
| Motions to amend or add parties | June 15, 2027 |
| Completion of Phase I Discovery | October 8, 2027 |
| Plaintiffs' general causation expert reports | November 8, 2027 |

| | |
|---|---|
| Defendants' general causation expert reports | December 8, 2027 |
| Plaintiffs' general causation expert rebuttal reports | December 31, 2027 |
| All general causation expert depositions complete (Plaintiffs' experts will be deposed before Defendants' experts on corresponding topics) | February 28, 2028 |
| Parties to submit joint or competing proposals on schedule for Phase II discovery, case-specific discovery, and a process for bellwether selections following the completion of case-specific discovery | February 28, 2028 |
| *Daubert* / Rule 702 and summary judgment motions on general causation | March 23, 2028 |
| Oppositions to *Daubert* / Rule 702 and summary judgment motions on general causation | May 1, 2028 |
| Replies ISO *Daubert* / Rule 702 and summary judgment motions on general causation | May 19, 2028 |

With respect to document productions, Defendants should produce documents on a rolling basis rather than waiting until all documents responsive to a request have been gathered. Likewise, Defendants should produce their privilege logs on a rolling basis. Any delay in Defendants' certification of substantial completion of document production and their privilege logs must be approved by Magistrate Judge Day and/or the Court and may result in the need to extend fact discovery and all subsequent deadlines by the same number of days.

From the Defendants' perspective, the phased approach directs the Court's attention first to the issue most likely to shape, or resolve, this litigation. From the

Plaintiffs' perspective, this approach allows full discovery of Defendants on most issues immediately so as not to delay trial dates.

**(i) Likely Pretrial Motions and Briefing Dates**

See (h).

**(j) Measures to Facilitate Resolution**

The parties agree that it is premature at this stage of the litigation to discuss measures to facilitate resolution.

**(k) Referral to a Magistrate Judge or Special Master**

The parties do not presently seek referral of any additional matters to a magistrate judge or special master beyond Magistrate Judge Day.

**(l) Principal Factual and Legal Issues**

***Plaintiffs' Statement:*** The legal and factual issues that have been identified by Plaintiffs thus far are summarized below.

***Causation.*** The body of scientific evidence supporting a causal association between Dupixent and CTCL is uniquely extensive and exceptionally strong, rivaling that of many well-established cause-and-effect relationships. Eight large, peer-reviewed retrospective cohort studies have identified an extremely strong increased risk of CTCL with the use of Dupixent, with some providing evidence of a positive dose-response relationship. The adjusted measures of association reported in these studies, which generally reflect a 60% to over 450% relative increase in

CTCL risk in Dupixent users, are substantially large such that they cannot simply be explained away by residual confounding or other possible methodological limitations, as Defendants argue.

Findings from epidemiologic studies are complemented by no fewer than 12 descriptive cohort studies, 10 systematic reviews, seven disproportionality analyses, two clinical trials and 40 published case reports and case series encompassing over 500 patients who developed CTCL after being treated with Dupixent. These figures are staggering, especially given the rarity of CTCL, a malignancy estimated to affect fewer than 10 out of every one million people prior to Dupixent's approval. Well-documented case series with longitudinal biopsy and histopathology data provide unequivocal proof of de novo CTCL development and progression in patients during Dupixent treatment.

A causal association between Dupixent and CTCL is also highly biologically plausible, with many peer-reviewed studies elucidating plausible mechanisms. The science linking Dupixent's mechanism of action to CTCL development and progression has advanced substantially since the FDA last reviewed Defendants' "weight-of-evidence" assessment a decade ago, before Dupixent even received approval for marketing. Indeed, the experimental and observational evidence supporting general causation is so compelling that physicians around the world have called for enhanced patient screening and monitoring and for restrictions on

Dupixent use in patients who may be at risk of developing CTCL. *See, e.g.,* Amatore F, Neildez M, et al. Cutaneous T-cell lymphomas and dupilumab for atopic dermatitis: A systematic review and expert consensus. *J Eur Acad Dermatol Venereol*. 2026.00:1–15.

Defendants reference an analysis conducted by the European Medicines Agency (EMA) in support of their position on general causation. In conjunction with its study, the EMA reviewed certain data submitted by Defendants – the nature of which is unknown to Plaintiffs. Importantly, however, EMA's analysis explicitly excluded patients with a prior history of Dupixent treatment and censored patients who initiated Dupixent treatment during follow-up. Accordingly, EMA's study was neither designed to nor capable of establishing or refuting an association between Dupixent and CTCL. Notably, EMA has never concluded that Dupixent does not or cannot cause CTCL.

Additionally, as with any complex products liability litigation involving a pharmaceutical product, factual and legal issues related to specific causation will need to be litigated by the parties.[3]

[3] Defendants also include a discussion of the Learned Intermediary Doctrine. While Plaintiffs agree that doctrine has application in these cases, Plaintiffs do not agree that doctrine in all states requires a showing that a "different or additional warning would have altered the prescriber's decision to prescribe Dupixent". While that is the standard in some states, there are many iterations of the doctrine across states with many states having a substantially lower burden of proof than is outlined by Defendants.

***Defendants' Involvement in Shaping the Medical Literature on Dupixent and CTCL.*** Defendants have launched an elaborate publishing campaign aimed at downplaying the significance of mounting research revealing a causal link between Dupixent and CTCL and attributing the observed CTCL risk to causes other than Dupixent. These publications are numerous, and include reviews, commentaries, editorials, letters to the editor and even original research articles. In at least one instance, the peer review process for an original research study claiming to find no association between Dupixent and CTCL was compromised, as both peer reviewers charged with evaluating the integrity and veracity of the paper were also Key Opinion Leaders retained by Defendants to promote Dupixent. In some of these articles, Defendants' Key Opinion Leaders failed to disclose relevant conflicts of interest entirely. This will be an important aspect of the discovery to be conducted by Plaintiffs in this litigation.

***The Need to Warn about CTCL with Dupixent Use.*** Given the extensive body of available science supporting the ability of Dupixent to cause and/or exacerbate CTCL, the need for a warning in the product labeling for Dupixent is of paramount importance in this litigation. The FDA has also pinpointed the concern about Dupixent's relationship to CTCL. For example, on January 15, 2025, the FDA notified Regeneron that it identified and began evaluating a newly identified safety signal (NISS) regarding "dupilumab therapy for atopic dermatitis being associated

with increased risk of cutaneious [*sic*] T-cell lymphoma". To date, the Defendants have failed to include any warning in the Dupixent labeling concerning the risk of CTCL with Dupixent use nor have Defendants provided any instructions as to the proper screening of patients to minimize the risk of CTCL.

Relatedly, Defendants note that they intend to litigate the issue of preemption in the context of the labeling of Dupixent. However, there is no information that has been presented to date that the Defendants have proposed a label change to the FDA that the agency has rejected. Nor is it clear, absent discovery, that the FDA has been fully informed of the "justifications for the warning required". *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 303 (2019). Thus, Plaintiffs are unaware of any present facts that would even present a colorable argument in favor of preemption from a general perspective.

Plaintiffs agree that a record will need to be further developed concerning the presence of "newly acquired information" pursuant to 21 C.F.R § 601.12. With that said, Plaintiffs do not agree with Defendants' suggestion that "newly acquired information" can only be established with published scientific studies. The regulatory definition is, in fact, much more expansive in specifically finding that "newly acquired information" includes "data, analyses, or other information not previously submitted to the agency … which may include (but are not limited to) data derived from new clinical studies, reports of adverse events, or new analyses of

previously submitted data (e.g., meta-analyses)”. 21 C.F.R. § 601.12 (f)(6). As such, discovery will be needed to determine what information was known or knowable by Defendants and the extent to which this information was provided to FDA.

***The Marketing of Dupixent.*** Extensive financial resources have been devoted by the Defendants to both expand the indications for Dupixent and to grow sales of the drug. Discovery will be needed concerning Defendants’ development and implementation of sales and marketing materials and messages including discovery concerning the extensive direct to consumer marketing that was conducted to encourage patients to request Dupixent from their physicians and the direct marketing by sales representatives aimed at the physicians themselves. Of notable importance here will be sales and marketing messaging concerning the safety of Dupixent, specifically as to CTCL along with the appropriate screening to be undertaken prior to placing a patient on Dupixent.

***The Need for Medical Monitoring and Ongoing Surveillance***. The *Ghosh* plaintiffs contend that consequences of Defendants’ alleged failure to warn are not limited to patients who have already developed CTCL. *Ghosh* seeks medical monitoring relief on behalf of Dupixent users without diagnosed T-cell lymphoma who allege that exposure has placed them at materially heightened risk of CTCL and created a present need for surveillance beyond ordinary care. *Ghosh* contends that appropriate precautions are not limited to screening at the time Dupixent is

prescribed and may require clinical examination, tissue analysis, molecular testing, and repeated biopsies over time to diagnose. The medical monitoring claims therefore raise the question whether Dupixent-exposed patients who have not yet developed diagnosed CTCL require ongoing dermatologic surveillance and clinically indicated testing to permit earlier detection of latent or emerging disease before it progresses to a more advanced, and potentially catastrophic, stage.

***Defendants' Statement:*** Defendants continue to evaluate the cases as they are filed. Currently, some of the legal and factual issues include:

***General Causation.*** A threshold issue is whether Dupixent (dupilumab) can cause or exacerbate cutaneous T-cell lymphoma ("CTCL"), a rare blood cancer that manifests in the skin. Defendants maintain that the scientific literature and the preclinical, clinical, and post-marketing data do not support a causal association. Some of the likely areas related to expert analysis of epidemiological and clinical data are outlined here, but not exhaustively:

CTCL is notoriously difficult to diagnose, particularly because in its early stages it can be nearly indistinguishable from atopic dermatitis ("AD"), a condition Dupixent is approved to treat. Therefore, confirming a diagnosis typically requires years-long clinical examination and testing, often with repeated biopsies and blood draws, potentially delaying an accurate diagnosis. Compounding this diagnostic overlap, patients with moderate-to-severe AD—the population for which Dupixent

is indicated—carry an elevated background risk of developing CTCL, independent of any biologic therapy, such as Dupixent. Many of these patients also have years of prior treatment with other medications, including systemic immunosuppressants and topical calcineurin inhibitors, that carry independent lymphoma risks.

Some epidemiological studies have reported a possible association between Dupixent and CTCL, but they fail to control for this confounding variable of AD severity, and instead compare Dupixent-treated patients (the sickest AD population) to inadequately matched control groups. Other studies that have, and properly compared Dupixent to other therapies administered for the treatment of moderate-to-severe AD, have found no increased CTCL risk. Regulators have reached the same conclusion. An analysis by the European Medicines Agency (the European equivalent of the FDA) confirmed the elevated background risk of CTCL among patients with moderate-to-severe AD and found no causal association with Dupixent. Likewise, FDA's own weight-of-evidence review found no causal mechanistic link between IL-4 receptor inhibition (Dupixent's mechanism of action) and increased cancer risk.

Indeed, since FDA's 2024 "potential safety signal" listing for Dupixent and CTCL, FDA has approved multiple label updates without requiring a CTCL warning.

***Specific Causation.*** Even if there were reliable evidence of general causation (and there is not), each plaintiff also must prove that Dupixent caused or exacerbated their individual CTCL, accounting for alternative causes, including the plaintiff's underlying AD severity, prior therapies, and the inherent multi-year progression of pre-existing disease. Given the diagnostic overlap and delay discussed above, specific causation analysis will likely require a case-by-case reconstruction of each plaintiff's diagnostic and treatment history to determine whether CTCL was already developing before Dupixent exposure began, and whether Plaintiffs who discontinued treatment well before their diagnosis can attribute any alleged exacerbation of disease to Dupixent.

***Preemption.*** Defendants anticipate asserting federal preemption as a defense, including whether FDA's regulatory framework for biologics preempts state-law failure-to-warn claims. Here, FDA reviewed CTCL-related adverse event data during its routine pharmacovigilance process and to date, has not required a label change. This will support the argument that FDA has considered and declined to act on the same safety information that Plaintiffs contend supported a stronger warning. Many of the Plaintiffs were prescribed Dupixent long before the publication of scientific studies that Plaintiffs now argue justified a label change.

***Adequacy of Warnings.*** Plaintiffs' claim that Defendants failed to adequately warn of the risk of CTCL. Defendants will argue that the existing label and

prescribing information, combined with the extensive body of literature on AD-associated lymphoma risk available, gave physicians adequate information to weigh CTCL risk independent of any Dupixent-specific warning. Defendants will further argue that because neither FDA nor EMA has concluded that Dupixent causes or accelerates CTCL, there is no reliable scientific basis on which a stronger warning could have been required at any point during the relevant period.

***Learned Intermediary Doctrine.*** Under the learned intermediary doctrine, governing prescription drugs in most jurisdictions, Defendants' duty to warn runs to the prescriber rather than to the patient. To prevail on a failure-to-warn theory, each plaintiff must show that the warning was inadequate and that a different or additional warning would have altered the prescriber's decision to prescribe Dupixent, which requires individualized proof. The learned intermediary doctrine will serve as a substantial defense for Defendants given the extensive discussion of AD-associated malignancy risk in the broadly publicized literature.

**(m) Defendant Corporations with Publicly Held Securities**

Defendants will file corporate disclosure statements as required by the Federal Rules of Civil Procedure 7.1.

**(n) Rule 23 Class Certification Procedures**

*Ghosh v. Regeneron Pharmaceuticals, Inc., et al.*, 1:26-cv-02826 (D.Md.), is now a member action in the MDL. *Ghosh* asserts putative class action claims that

principally seek medical monitoring relief on behalf of Dupixent users who have not yet developed T-cell lymphoma.

The *Ghosh* plaintiffs and Defendants propose that discovery uniquely relating to Rule 23, the medical necessity and design of a surveillance program, and other monitoring-specific issues shall proceed on a schedule to be submitted to the Court (as agreed upon or via competing proposals) on or before January 15, 2027.

**(o) Whether an Initial Census or Similar Process Would Be Beneficial**

The parties do not believe a formal census is necessary at this stage, given the limited number of plaintiffs currently in the MDL. The Parties agree that Plaintiffs will provide their Rule 26(a)(1) disclosures and a short Plaintiff Profile Form with limited information, including the identification of medical providers and treaters and dates of Dupixent use, along with the provision of medical authorizations, and all medical records in Plaintiffs' possession as part of Phase I discovery. Complete Plaintiff Profile Forms (PPF) and all accompanying documents will be produced by December 18, 2026 or 60 days after the Court enters the order concerning the PPF, whichever is later, for all current MDL Plaintiffs, and within 60 days of transfer or 60 days after the Court enters the PPF order, whichever is later, for any subsequently filed cases. Defendants' Rule 26(a)(1) disclosures will be produced on the same date that each Plaintiff's Rule 26(a)(1) disclosures are due. The Parties will meet and confer and propose an order to the Court more specifically memorializing the

foregoing. The Parties propose that a PFS and DFS will be negotiated among the Parties and exchanged as part of Phase II.

**(p) Ongoing Criminal Investigations or Proceedings**

The parties jointly represent that they are not aware of any ongoing criminal investigations or proceedings related to the allegations in these cases.

Dated: September 10, 2026

Respectfully submitted,

**WEITZ & LUXENBERG PC**

*/s/ Ellen Relkin*
Ellen Relkin (N.J. Bar #006691985)
Laura J. Baughman
700 Broadway, Fifth Floor
New York, NY 10003
Phone: 212-558-5500
Fax: 212-344-5461
erelkin@weitzlux.com
lbaughman@weitzlux.com

***Attorneys for Plaintiffs***

**Levin, Papantonio, Proctor, Buchanan, O'Brien, Barr & Mougey, P.A**.

*/s/ Brandon L. Bogle*
Brandon L. Bogle
Madison Mougey
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
(850) 435-7043 (Telephone)
(850) 435-7020 (Facsimile)
bbogle@levinlaw.com
mmougey@levinlaw.com

***Attorneys for Plaintiffs***

**SEEGER WEISS LLP**

*/s/ Christopher A. Seeger*
Christopher A. Seeger
David R. Buchanan
Gala Grand
55 Challenger Road, 6 th Floor
Ridgefield Park, NJ 07660
T 973-639-9100
F 973-679-8656
cseeger@seegerweiss.com
dbuchanan@seegerweiss.com
ggrand@seegerweiss.com

***Attorneys for Plaintiffs***

**SHOOK, HARDY & BACON L.L.P.**

*/s/ Adrienne Byard*
Adrienne L. Byard
Harley Ratliff
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
abyard@shb.com
hratliff@shb.com

**WILLIAMS & CONNOLLY LLP**

Joseph G. Petrosinelli
jpetrosinelli@wc.com
Jessica Bodger Rydstrom
jrydstrom@wc.com
680 Maine Avenue, SW
Washington, DC 20024

Telephone: (202) 434-5000
Facsimile: (202) 434-5029

***Attorney for Regeneron Pharmaceuticals, Inc.***

**ARNOLD & PORTER KAYE SCHOLER LLP**

*/s/ Lee M. Cortes, Jr.*
Lee M. Cortes, Jr., Esq.
N.J. Attorney No. 04199-2009
One Gateway Center Suite 1025
Newark, New Jersey 07102
Lee.Cortes@arnoldporter.com

David Kerschner, Esq. (*PHV forthcoming)*
NY Bar No. 5126420
250 West 55th Street
New York, NY 10019-9710
David.Kerschner@arnoldporter.com

Lindsay Strong
300 North LaSalle Drive | Suite 3500
Chicago, IL 60654-3406
Telephone: 312.583.2300
Facsimile: 312.583.2360
Lindsay.Strong@arnoldporter.com

Daniel S. Pariser
601 Massachusetts Ave., NW
Washington, D.C. 20001
T: +1 202.942.5000
daniel.pariser@arnoldporter.com

***Attorneys for Sanofi Aventis U.S. LLC and Genzyme Corporation***